**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William A. Tillman,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-01551-PHX-SPL<br><br>**ORDER** |

Plaintiff William A. Tillman challenges the denial of his Application for Disability Insurance Benefits under the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial (Doc. 1), and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant's Response Brief (Doc. 23, Def. Br.), and Plaintiff's Reply. (Doc. 24, Reply.) The Court has reviewed the briefs and Administrative Record. (Doc. 14, AR.) The parties agree to remand but disagree as to whether further proceedings are appropriate. (Def. Br. at 1, Reply at 1.) The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

**I.  BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on November 15, 2018, for a period of disability benefits beginning on April 11, 2017, his alleged onset

date.[1] (AR. 210-18.) After a hearing on November 7, 2019 (AR. at 37-80), ALJ Kathleen Mucerino issued a written decision denying Plaintiff's claim on April 27, 2020. (AR. at 13-31.) The Social Security Appeals Council upheld the ALJ's denial in a letter dated July 30, 2020 (AR. at 1-6), and Plaintiff sought judicial review on August 4, 2020. (Doc. 1.)

The Court has reviewed the medical evidence in its entirety. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. The ALJ evaluated Plaintiff's disability based on severe impairments including post-traumatic stress disorder, depressive disorder, ulnar neuropathy, degenerative joint disease of the bilateral shoulders, a glenoid labrum tear, bilateral pes planus, and obesity. (AR. at 15.) The ALJ found Plaintiff physically limited to "medium work," as defined in federal regulations,[2] with limitations to lifting or carrying up to 50 pounds occasionally and 25 pounds frequently; standing and/or walking for "about six hours" in an eight-hour day; sitting for "more than six hours" in an eight-hour day; and frequently climbing ladders, ropes, and scaffolds, crawling, and reaching in all directions. (AR. at 18.) The ALJ concluded Plaintiff suffered additional non-exertional limitations resulting from Plaintiff's mental health impairments, pain, medication side effects, "and other symptoms and limitations," but that he retained "the ability to understand, remember, and apply information and maintain his concentration, persistence, or pace regarding simple and detailed instructions in an environment with only frequent contact with others." (AR. at 18.) At Plaintiff's hearing, a vocational expert ("VE") testified an individual with these limitations could perform Plaintiff's past relevant work. (AR. at 74.) In the unfavorable decision, the ALJ adopted this testimony and concluded Plaintiff could perform his past relevant work as a field service representative and electronics technician. (AR. at 24.) The ALJ made additional,

---

[1] Plaintiff's Application Summary for Disability Insurance Benefits reflects he initially alleged disability beginning January 1, 2016. (AR. at 212.) Later in the process, Plaintiff, through counsel, moved to amend his alleged onset date to April 11, 2017. (AR. at 38, 232.) The ALJ granted the motion at Plaintiff's November 2019 hearing (AR. at 38), but the unfavorable decision does not reflect the change in onset date. (AR. at 13, 26.)

[2] 20 C.F.R. § 404.1567(c).

alternative findings that, even if Plaintiff was limited to light work with additional non-exertional limitations, he would still be capable of performing other jobs. (AR. at 25.)

In her discussion of the opinion evidence of record, the ALJ found the opinion of consultative psychologist Charles Jay House, Ph.D. persuasive, but the opinion of another examining psychologist, Brent Geary, Ph.D., unpersuasive. (AR. at 23.) Dr. House, who examined Plaintiff at the behest of the state's Disability Determination Services in January 2019, concluded Plaintiff was "capable of understanding both simple and detailed instructions in work-like procedures"; maintaining attendance and a regular schedule; "getting along with coworkers and supervisors under normal situations"; and "adapt[ing] to routine changes in a work setting." (AR. at 735-36.)

Dr. Geary, on the other hand, who was referred by Plaintiff's attorney and who examined Plaintiff in October 2019, assigned far more significant restrictions in several different functional areas, such as Plaintiff's ability to perform activities within a schedule or maintain regular attendance; respond to customary work pressures; and complete a normal workday or work week. (AR. at 910-11.) Dr. Geary administered psychometric testing and noted that despite Plaintiff's average range intelligence, he exhibited "psychomotor slowing" and "reduced information processing speed" attributable to depression and PTSD. (AR. at 908.) Dr. Geary concluded Plaintiff's "maintenance of pace in an employment context" and "interpersonal relations" are Plaintiff's "primary problematic variables." (AR. at 908.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to

more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id.* If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If he cannot, he is disabled. *Id.*

## III. ANALYSIS

Plaintiff presents five issues for this Court's consideration: (1) whether the ALJ cited legally sufficient, "specific and legitimate reasons" for rejecting the opinion of examining psychologist, Brent Geary, Ph.D.; (2) whether the ALJ provided legally sufficient "clear and convincing reasons" for rejecting Plaintiff's symptom testimony; (3) whether the ALJ rejected lay witness testimony without citing germane reasons; (4) whether the ALJ's findings at steps four and five of the sequential evaluation are supported by substantial evidence; and (5) whether the Court should remand for payment or remand

for additional proceedings. (Pl. Br. at 1-2, 18-19.)

Defendant concedes the ALJ failed to properly evaluate Plaintiff's symptom testimony by making specific findings regarding the weight given to that testimony and the reasons for rejecting it. (Def. Br. at 2-3.) Defendant further concedes that the ALJ did not provide legally sufficient reasons for rejecting the lay witness testimony of Plaintiff's brother. (Def. Br. at 2-3.) Defendant urges that a remand for additional proceedings is necessary, however, "to determine whether Plaintiff is disabled, and to permit the Commissioner to make specific findings about Plaintiff's symptom allegations, and evaluate the third party statements from Plaintiff's brother." (Def. Br. at 2.) Defendant disagrees that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Geary's opinion. (Def. Br. at 10-15)

Because the parties agree that the ALJ failed to appropriately evaluate Plaintiff's symptom testimony and the lay witness evidence, the issues remaining for this Court's consideration are the following: (1) whether the ALJ erred in his evaluation of Dr. Geary's opinion[3]; (2) whether substantial evidence supports the ALJ's RFC findings at steps four and five; and (3) whether remand for payment of benefits or new proceedings is warranted.

    **A.**     **The ALJ failed to cite substantial evidence in support of her decision to find Dr. Geary's opinion unpersuasive.**

For disability benefits claims filed after March 27, 2017—such is the case here—new Social Security Administration ("SSA") regulations instruct an ALJ specifically not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ should consider the persuasiveness of a medical opinion using several factors, including supportability,

---

[3] Defendant contends the Court need not address this issue. (Def. Br. at 3.) The Court will consider the issue, however, because an ALJ's harmful error in evaluating the opinion evidence of record—when that evidence would necessitate a finding of disabled if accepted as true—constitutes a separate, distinct ground for the Plaintiff to argue application of the credit-as-true rule. *Garrison v. Colvin*, 759 F.3d 995, 1020-22 (9th Cir. 2014).

consistency, medical specialization, and the existence of a treating relationship. § 404.1520c(c) Supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how she considered both factors.[4] § 404.1520c(b)(2). Instead of a shifting analysis based on the existence of a treating relationship or prior examination, the ALJ must now "articulate . . . how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record," considering the factors mentioned above. § 404.1520c(b). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2).

District Courts in this Circuit have issued occasionally divergent rulings on whether the "clear and convincing" and "specific, legitimate" standards for rejecting the opinion of a treating or examining medical source survived the recent regulatory shift. *Compare Kathy Jean T. v. Saul*, 2021 WL 2156179, at *5-7 (S.D. Cal. May 27, 2021), *and Agans v. Saul*, 2021 WL 1388610, at *5-7 (E.D. Cal. Apr. 13, 2021), *with Kathleen G. v. Comm'r. of Soc. Sec. Admin.*, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020). Notably, in *Agans*, instead of applying the specific, legitimate standard, the court held the SSA may override the Ninth Circuit's interpretations of the Act, and where no "judicial precedent hold[s] that the statute unambiguously forecloses the agency's interpretation," the SSA's interpretation of regulations is entitled to *Chevron* deference.[5] *Agans*, 2021 WL 1388610 at *7; *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

---

[4] The ALJ is not required to discuss her analysis of the other factors unless two or more medical opinions or prior administrative findings are equally well-supported and consistent with the evidence, but not identical. 20 C.F.R. § 404.1520c(b)(2), (3).

[5] *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837 (1984).

Applying the new regulations, recent decisions from this Court have analyzed whether the ALJ's stated reasons for rejecting opinion evidence were supported by substantial evidence. *E.g.*, *Ahkenblit v. Comm'r of Soc. Sec. Admin.*, 2021 WL 6061947, at *3 (D. Ariz. Dec. 22, 2021) (citations omitted); *Garcia v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5822642, at *2-3 (D. Ariz. Dec. 8, 2021) (citations omitted); *Andrews v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4260787, at *4-5 (D. Ariz. Sept. 20, 2021); *but see Roy v. Comm'r of Soc. Sec. Admin.*, 2022 WL 34678, at *6 (D. Ariz. Jan. 4, 2022); *Brisbois v. Comm'r. of Soc. Sec. Admin.*, 2021 WL 2134361, at *5 (D. Ariz. May 26, 2021) ("The Court is satisfied that the ALJ gave specific and legitimate reasons, supported by substantial evidence, for discounting, at least in part, Drs. Marku and Coelho's opinions and findings.") (citations omitted).

Following the recent decisions of the Courts of this District and recognizing that the Ninth Circuit has not held that the terms of the Act unambiguously foreclose the SSA's interpretation in this area, the Court will defer to the SSA's 2017 regulations and assess whether the ALJ's reasoning regarding the persuasiveness of each opinion is supported by substantial evidence. *Orn*, 495 F.3d at 630 (a court may set aside an ALJ's decision if it is not based on substantial evidence or is based on legal error). In the end, an ALJ's decision must still, in all respects, be supported by substantial evidence. 42 U.S.C. § 405 ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .") A review of the medical record shows the ALJ did not cite substantial evidence to support her reasons for finding Dr. Geary's opinion unpersuasive.

The Court can discern four reasons the ALJ provided for finding Dr. Geary's opinion unpersuasive: (1) Dr. Geary did not review updated medical records, including "military records showing [Plaintiff's] ability to work"; (2) Dr. Geary's opinion is inconsistent with statements made by Plaintiff that his symptoms improved with medication and that he only began taking psychotropic medications shortly prior to the examination; (3) Dr. Geary's conclusions are not supported by his normal mental status

findings; and (4) Dr. Geary examined Plaintiff on only one occasion. (AR. at 23.) The ALJ asserted that, for those reasons, "the opinion of Dr. Geary is not persuasive based on the foregoing factors, which include supportability and consistency."[6] (AR. at 24.)

### i. Dr. Geary did not review evidence available at the hearing level, including Plaintiff's military records.

The Court gives little import to the ALJ's rationale that Dr. Geary did not review all available medical records. Plaintiff notes Dr. Geary reviewed more evidence than Dr. House, the consultative examiner whom the ALJ deemed persuasive. (Pl. Br. at 12.) Plaintiff is correct: Dr. Geary described medical records from Plaintiff's treating psychiatrist, Dr. Edward Rivera, spanning May 15, 2017 to December 5, 2017; records from the Veterans Affairs ("VA") Northwest Clinic in Sun City, where Plaintiff was treated by psychiatrist Mari Barouta-Karzo; records from the Phoenix VA Medical Center where Plaintiff underwent psychiatric treatment with Superna Kundra, M.D. between June and August 2019; a May 2019 psychotherapy intake at the Phoenix VA Medical Center Jade Opal Clinic; a July 2018 PTSD Review Compensation and Pension Examination by psychologist Jocelyn Abanes; the House consultative examination; a November 2018 VAMC disability rating document, and other documents detailing Plaintiff's treatment for his several medical conditions. (AR. at 902-903.) Dr. House, by comparison, reviewed a Function Report completed by Plaintiff in December 2018 and a "summary of records that was seemingly done by a registered nurse[] that was working for the Veterans

---

[6] Defendant asserts the new regulations preclude an ALJ from "accept[ing], reject[ing], or even giv[ing] any specific evidentiary weight to a medical opinion." (Def. Br. at 8.) The regulation provides the ALJ "will not defer or give any specific evidentiary weight . . . to any medical opinion . . . ." 20 C.F.R. § 404.1520c(a). But the ALJ must still articulate a determination of persuasiveness for each medical opinion. 20 C.F.R.§ 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record.") If an ALJ finds a particular opinion unpersuasive, she must still articulate why, and her explanation for that must be supported by substantial evidence. 20 C.F.R. § 404.1520c(b)(2). "[T]he new regulations require an ALJ to explain their reasoning with specific reference to how they considered the supportability and consistency factors . . . and still require the ALJ to provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive." *Akhenblit*, 2021 WL 6061947, at *2. (Citations omitted).

Administration in Missouri" from June 2018. (AR. at 728.) It would appear Dr. Geary reviewed significantly more records than Dr. House.

Moreover, the records the ALJ specifically stated Dr. Geary had not reviewed involved Plaintiff's military career, enlistment paperwork, transfers, commendations, assignments, service reviews, and travel orders.[7] (AR. at 234-400) They significantly predate Plaintiff's alleged onset date and have little discernable relevance to his current alleged disability. If the ALJ believed they did, she did not explain why. Importantly, Dr. House did not review these records either. (AR. at 728.) The Court finds this rationale to be unsupported by substantial evidence from the record.

### ii. Dr. Geary's opinion is inconsistent with Plaintiff's statements.

The ALJ concluded Dr. Geary's opinion is inconsistent with Plaintiff's statement that he only recently began taking psychotropic medications, and that his symptoms had recently improved. (AR. at 23.) During their interview, Plaintiff did describe some improvement with medications to Dr. Geary. (AR. at 904.) The Court does not understand the relevance, however, of Plaintiff misstating when he began taking psychotropic medications. Regarding Plaintiff's alleged improvement, the Court does not perceive allegations of improvement to be facially inconsistent with the testing results procured by Dr. Geary. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting that physician's statements must be read in context of their overall diagnosis and treatment history). The Court also notes Plaintiff's reported improvement is rather vague, and it is unclear to what extent or in what manner Plaintiff's improvement manifested. The ALJ, by generally alluding to Plaintiff's improvement as documented in "other records," and failing to cite anything specific (AR. at 23), leaves the Court guessing.

---

[7] Plaintiff also notes Dr. Geary reviewed these records after the unfavorable decision and provided a statement to the Appeals Council that they would not change his opinion. (AR. at 32-34.) The Court notes the Appeals Council did not exhibit this evidence, as it did not "show a reasonable probability that it would change the outcome of the decision." (AR. at 2.) Plaintiff does not challenge the Appeals Council's refusal to consider this evidence in the briefs (*e.g.*, Pl. Br. at 1-2), so the Court does not consider it. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

1   While, earlier in the decision, the ALJ cited a December 2017 mental health treatment note indicating Plaintiff reported his mood improved on medications (AR. at 21), a review of that treatment record indicates Plaintiff also continued to "endorse[] recurrent, involuntary, and intrusive distressing memories of the traumatic events while in [the] military[]; avoidance of or efforts to avoid external reminders that arouse distressing memories about the traumatic events; persistent negative emotional state; feelings of detachment; irritable behaviour [*sic*] and angry outbursts; + hypervigilance; [and] problems with concentration." (AR. at 522.) Elsewhere in the record, Plaintiff reported an improved mood with a medication increase in July 2019 (AR. at 866), but in August, he continued to report nightmares, flashbacks, avoidance of crowded places, "off and on" anxiety symptoms, hypervigilance, and an increased startle reflex. (AR. at 861.) Plaintiff reported the same ongoing symptoms in October 2019. (AR. at 944.)

Overall, the ALJ failed to cite substantial evidence to support her contention that Plaintiff's reported improvement undermines Dr. Geary's conclusions. It appears Plaintiff reported some improvement to Dr. Geary (AR. at 904), which Dr. Geary presumably took into account, and the ALJ failed to cite any semblance of a pattern of sustained improvement or adequate references to improved symptoms from the larger evidentiary record which would be sufficient to constitute substantial evidence.

### iii. **Dr. Geary's conclusions are inconsistent with his "generally normal" findings on mental status exam.**

The Court notes Plaintiff scored 27 out of 30 on his mini mental status examination with Dr. Geary. (AR. at 902.) He was able to repeat phrases, interpret proverbs, identify recent Presidents of the United States, recall three out of three words after a five-minute delay, sketch intersecting pentagons, and draw the face of a clock reading a specific time. (AR. at 902.) Plaintiff did not know the date. (AR. at 902.)

Plaintiff argues that Dr. Geary noted his "hypervigilance with regard to noises," "psychomotor slowing," and "deficits in long-term memory during the testing." (Pl. Br. at 13.) Dr. Geary did observe and document "very much slowed" psychomotor speed and

information processing during psychometric testing—which he attributed to both depression and PTSD—and which, in his opinion, appeared to be a "problematic variable[]" which would cause Plaintiff difficulties in "maintenance of pace in an employment context . . . ." (AR. at 908.) While the ALJ briefly alluded to this testing earlier in the decision, the ALJ's discussion of the supportability and consistency of Dr. Geary's report does not account for this. (AR. at 23.) This omission is important because Dr. Geary attributes the limitations he assigned, in part, to Plaintiff's deficient performance on psychometric testing, not any perceived difficulties during the mental status examination. (AR. at 908.) The Court must show deference to the ALJ when there exists more than one rational interpretation of the record, *Thomas*, 278 F.3d at 954, but the Court cannot find the ALJ's interpretation to be rational when those testing results are not addressed.

### iv. Dr. Geary's examination is a "one-time evaluation."

The ALJ noted Dr. Geary's opinion was based on a single examination and that he did not have all available evidence (AR. at 23), but Dr. House's opinion—which the ALJ deemed persuasive—was also based on a single examination, and every medical opinion in this context could be perceived as a snapshot in time. To the extent the ALJ cited Dr. Geary's "one-time examination" as a basis to belie his opinion, the Court finds this reason to be unsupported by substantial evidence.

### v. **Substantial evidence does not support the ALJ's determination that Dr. Geary's report is unpersuasive.**

The ALJ's conclusion that Dr. Geary's report is unpersuasive is not supported by substantial evidence. The strongest of the reasons the ALJ provided—that Dr. Geary's conclusions are not supported by his mental status examination findings—is belied by evidence in that report of significant psychomotor slowing attributable to depression and PTSD and decreased memory attributable to "the distractibility typical of PTSD." (AR. at 908.) When determining whether a particular finding is supported by substantial evidence, the Court looks to the record as a whole including, in this case, the whole of Dr. Geary's report. *Orn*, 495 F.3d at 630. The ALJ does not meet her burden by isolating unfavorable

evidence from that report to justify rejecting it. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotations and citations omitted). Her analysis must bear the weight of substantial evidence, and the Court cannot conclude as much when critical testing supporting the limitations the physician assigned is ignored in her discussion of the consistency and supportability factors.

### B.   Substantial Evidence Supported the ALJ's Hypotheticals.

Plaintiff alleges the hypothetical questions the ALJ posed to the VE did not account for all of Plaintiff's limitations, including "Tillman's credible allegations and the limitations assessed by . . . Dr. Geary." (Pl. Br. at 18.) Plaintiff argues that, consequently, the VE's testimony regarding Plaintiff's ability to work certain jobs "has no evidentiary value," and since the ALJ's decision is based on that testimony, it is not supported by substantial evidence. (Pl. Br. at 18.)

The Court first notes that a few of the hypotheticals posed to the VE at the hearing presumably encompass the limitations Dr. Geary assigned. The ALJ, for instance, asked the VE if an individual who is off-task 11-to-15% of a workday or work week and is absent one or more times per month could perform any of the Plaintiff's former jobs or other work. (AR. at 77.) The VE testified that individual could not perform any work. (AR. at 77.) Similarly, Plaintiff (through counsel) asked if an individual who would be off-task 11-to-15% of the time could perform work in any of the other hypothetical scenarios the ALJ previously inquired about. (AR. at 78.) Again, the VE testified that no work was available. (AR. at 78.) These hypotheticals conceivably encompass the limitations Dr. Geary assigned, as he indicated Plaintiff experiences a number of "moderate" limitations defined as "noticeable difficulty (distracted from job activity) from 11-20 percent of the work day or work week (*i.e.*, more than one hour/day or more than one-half day/week[.]" (AR. at 910.) Of note, the hypotheticals posed by both Plaintiff and the ALJ were arguably less restrictive than the Dr. Geary's RFC, but still work-preclusive.[8] Moreover, even if no such

---

[8] Dr. Geary's "moderate" limitations state Plaintiff would be off-task up to 20% of the time, as opposed to the 15% from the ALJ's hypothetical. (AR. at 910.) Moreover, Dr.

- 12 -

1 hypothetical had been asked, Plaintiff still had the opportunity to procure VE testimony on the specific limitations Dr. Geary assigned, but did not. Similarly, Plaintiff vaguely asserts the hypothetical questions posed to the VE "omitted [Plaintiff's] credible allegations," but Plaintiff does not explain how. (Pl. Br. at 18.) The various limitations Plaintiff testified too could have been accounted for in either of the previous two hypotheticals, and Plaintiff (through counsel) had the opportunity to ask more specific hypotheticals encompassing the limitations Plaintiff described. The Court finds no error on this issue.

### C. The appropriate remedy is a remand for additional proceedings.

The credit–as–true rule applies if each part of a three–part standard is satisfied. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence was credited as true, then the ALJ would be required to find the claimant disabled. *Id*. The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). Even if all three elements are satisfied, however, the Court may still remand for further proceedings when an analysis of the record of the whole casts "serious doubt" on whether a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. ("*Connett* [*v. Barnhart's*] 'flexibility' is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.") (citations omitted)

The Court concludes that the credit-as-true rule should not apply here. A review of the record casts sufficient doubt on the issue of disability and additional proceedings would

---

Geary assigned a number of moderately-severe limitations in a variety of functional categories which are more restrictive than moderate limitations (off-task more than 20% of a workday). (AR. at 910-11.)

- 13 -

1  be beneficial. The larger evidentiary record contains other clinical findings that could
2  potentially belie Plaintiff's reports of disabling symptoms (AR. at 566, 822-23, 864, 877,
3  883, 946); reports to his providers raising questions about his motivations for leaving
4  employment (AR. at 530); and reports indicating an interest in work activity (AR. at 522).
5  The Court notes Plaintiff's nebulous responses to direct questions from the ALJ regarding
6  the circumstances surrounding his leaving employment. (AR. at 55.) While the Court does
7  not endeavor to independently evaluate Plaintiff's symptom testimony, a review of the
8  record for the purposes of considering whether to remand for payment of benefits is
9  appropriate. *Garrison*, 759 F.3d at 1021.

10       Moreover, a remand for additional proceedings can be appropriate when an ALJ
11 fails to consider lay witness evidence. *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th
12 Cir. 1989). ("If additional proceedings can remedy defects in the original administrative
13 proceedings, a social security case should be remanded. Where, however, a rehearing
14 would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate.")
15 (citations omitted); *J.B. v. Saul*, 2020 WL 4383474, at *6-7 (C.D. Cal., July 30, 2020);
16 *Jolly v. Astrue*, 2011 WL 3841603, at *8-9 (W.D. Wash. Aug. 30, 2011.)

17       The *Schneider* case cited by Plaintiff does not compel a remand for computation of
18 benefits. There, the Court merely determined remand was appropriate under those
19 circumstances where, after concluding the record was fully developed and additional
20 proceedings would serve no useful purpose, "it becomes clear that the severity of
21 [claimant's] functional limitations is sufficient to meet or equal [a Listing]" upon due
22 consideration of the lay opinion evidence. *Schneider v. Comm'r of Soc. Sec. Admin.*, 223
23 F.3d 968, 976 (9th Cir. 2000). In *Schneider*, the Court noted "overwhelming" evidence that
24 Plaintiff's medical conditions met or medically equaled a Listing. *Id*. Here, acceptance of
25 the Plaintiff's brother's statements as true does not establish Plaintiff's medical conditions
26 meet or medically equal a Listing, or that Plaintiff is otherwise disabled. Plaintiff's brother
27 details various ways Plaintiff's memory and concentration difficulties impact his daily life,
28 including lapses in home maintenance or personal hygiene. (AR. at 424-28.) While these

statements certainly weigh in Plaintiff's favor, they do not plainly establish his disability, and weighing this evidence and establishing its import are within the distinct province of the Commissioner. *McAllister*, 888 F.2d at 603. ("There may be evidence in the record to which the Secretary can point to provide the requisite specific and legitimate reasons for disregarding the testimony of McAllister's treating physician. Then again, there may not be. In any event, the Secretary is in a better position than this court to perform this task."); *but see Hicks v. Astrue*, 2012 WL 1188901, at *3 (E.D. Wash. Apr. 5, 2012) ("The McAllister approach [of remanding to allow the ALJ to provide legally sufficient reasons for disregarding a medical opinion] appears to be disfavored where the ALJ fails to provide any reasons for discrediting a treating physician opinion.") (citations omitted).

Additional proceedings would also serve useful purposes. For instance, Plaintiff argues the limitations in the hypotheticals posed to the VE at the hearing are deficient in that they do not adequately account for all of Plaintiff's limitations. A remand for additional proceedings affords Plaintiff another opportunity to pose hypotheticals to the VE based on more specific limitations from either Dr. Geary's report or Plaintiff's symptom testimony. Accordingly, the Court concludes that remand for further administrative proceedings is more appropriate.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed**.

**IT IS FURTHER ORDERED** that Defendant's request for remand is granted, in part, to the extent this Court concludes further administrative proceedings are necessary, and that this case is **remanded** to the Social Security Administration for additional proceedings consistent with this opinion.

///

///

///

///

///

1    **IT IS FURTHER ORDERED** directing the Clerk to enter judgment consistent
2 with this Order and **close this case**.
3    Dated this 6th day of January, 2022.

*[signature]*
Honorable Steven P. Logan
United States District Judge